134 Nev., Advance Opinion 72

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, Appellant, vs. SFR INVESTMENTS POOL 1, LLC, A NEVADA LIMITED LIABILITY COMPANY, Respondent. | No. 70501 |



FILED

SEP 13 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment to the buyer and denying summary judgment to the first deed of trust holder in a quiet title action following an HOA lien foreclosure sale. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

*Reversed and remanded.*

Akerman, LLP, and Darren T. Brenner, Thera A. Cooper, and Vatana Lay, Las Vegas,
for Appellant.

Kim Gilbert Ebron and Jacqueline A. Gilbert, Howard C. Kim, Zachary Clayton, and Jason G. Martinez, Las Vegas,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

This is a quiet title dispute between the buyer at an HOA lien foreclosure sale and the holder of the first deed of trust on the property. The


*As amended on denial of rehearing, November 13, 2018.*

18-35748

holder of the first deed of trust tendered the amount needed to satisfy the superpriority portion of the lien to the HOA before the sale but the trustee proceeded with foreclosure anyway. The question presented is whether the buyer took title subject to the first deed of trust. We hold that a first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust. We therefore reverse the district court's grant of summary judgment for SFR Investments Pool 1, LLC and remand for further proceedings consistent with this opinion.

I.

In 2012, the original owner of 3617 Diamond Spur Avenue (Property) fell behind on his payments to the Sutter Creek Homeowners Association (HOA). The HOA initiated foreclosure proceedings, recording a delinquent assessment lien and a notice of default and election to sell. After receiving notice of the default, Bank of America, the holder of the first deed of trust on the property, contacted the HOA, seeking to clarify the superpriority amount and offering to pay that amount in full. Based on the HOA's representations, Bank of America tendered payment of $720—nine months' worth of assessment fees—to the HOA. The letter included with the tender stated that the HOA's acceptance would be an "express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [Property] have now been 'paid in full.'" The HOA rejected the payment and sold the property at foreclosure to respondent SFR Investments Pool 1, LLC.

After the foreclosure sale, litigation ensued with Bank of America and SFR both claiming title to the Property. On cross-motions for summary judgment, the district court granted summary judgment to SFR and denied summary judgment to Bank of America, from which order Bank

of America timely appealed. The case was routed to the court of appeals, which reversed and remanded. SFR then petitioned for review of the decision under NRAP 40B(a), which we granted.

## II.

Bank of America argues that its tender was valid and satisfied the superpriority portion of the HOA's lien. SFR responds that the HOA's rejection was in good faith because at the time of the tender it was unsettled as to the amount of the superpriority portion of the lien, and the tender was conditional. SFR also asserts that it is protected as a bona fide purchaser of the property.

The grant or denial of summary judgment is reviewed de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate if the pleadings and other evidence on file, viewed in the light most favorable to the nonmoving party, demonstrate that no genuine issue of material fact remains in dispute and that the moving party is entitled to judgment as a matter of law. *Id.* "A genuine issue of material fact exists if, based on the evidence presented, a reasonable jury could return a verdict for the nonmoving party." *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 457-58, 168 P.3d 1055, 1061 (2007).

## A.

Bank of America asserts that it tendered the correct amount to satisfy the superpriority portion of the HOA lien and that it was not required to do more. A valid tender of payment operates to discharge a lien or cure a default. *Power Transmission Equip. Corp. v. Beloit Corp.*, 201 N.W.2d 13, 16 (Wis. 1972) ("Common-law and statutory liens continue in existence until they are satisfied or terminated by some manner recognized by law. A lien may be lost by . . . payment or tender of the proper amount

of the debt secured by the lien."); *see also* 74 Am. Jur. 2d *Tender* § 41 (2012). Valid tender requires payment in full. Annotation, *Tender as Affected by Insufficiency of Amount Offered*, 5 A.L.R. 1226 (1920). The HOA refused to accept Bank of America's tender, because it did not satisfy both the superpriority and subpriority portions of the lien.

NRS 116.3116 governs liens against units for HOA assessments and details the portion of the lien that has superpriority status. At the time of the tender in 2012, the statute provided that the superpriority portion of an HOA lien was prior to a first security interest on a unit

> to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 [maintenance and nuisance abatement] and to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien.

NRS 116.3116(2) (2012). A plain reading of this statute indicates that the superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments. We explained as much in *SFR Investments Pool 1 v. U.S. Bank*, 130 Nev. 742, 748, 334 P.3d 408, 412 (2014), and *Horizons at Seven Hills v. Ikon Holdings*, 132 Nev. 362, 371, 373 P.3d 66, 72 (2016).[1]

---

[1]Citing *Horizons at Seven Hills*, 132 Nev. at 365 n.4, 373 P.3d at 69 n.4, SFR argues for the first time in its petition for review that Bank of America's tender was insufficient because it did not include collection costs and attorney fees. SFR waived this argument, both by failing to raise it timely in district court or on appeal and by failing to cogently distinguish the statutory and regulatory analysis in *Horizons at Seven Hills*. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3

The record establishes that Bank of America tendered the correct amount to satisfy the superpriority portion of the lien on the property. Pursuant to the HOA's accounting, nine months' worth of assessment fees totaled $720, and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement. Bank of America sent the HOA a check for $720 in June 2012. On the record presented, this was the full superpriority amount.

## B.

The district court deemed Bank of America's tender insufficient because it was conditional. It based this finding on the letter Bank of America sent with its payment, which stated,

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

SFR argues, and the district court found, that this clause imposed an impermissible condition on the tender, as it required the HOA to potentially accept less than the full amount it was due under NRS 116.3116, given that the scope of the superpriority portion of an HOA's lien was not yet clarified at the time of the tender.

In addition to payment in full, valid tender must be unconditional, or with conditions on which the tendering party has a right

---

(2011) (arguments not raised on appeal are deemed waived); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (an appellate court needed not consider claims that are not cogently argued).

SUPREME COURT
OF
NEVADA

(O) 1947A

5

to insist. 74 Am. Jur. 2d *Tender* § 22 (2012). "The only legal conditions which may be attached to a valid tender are either a receipt for full payment or a surrender of the obligation." *Heath v. L.E. Schwartz & Sons, Inc.*, 416 S.E.2d 113, 114-15 (Ga. Ct. App. 1992); *see also Stockton Theatres, Inc. v. Palermo*, 3 Cal. Rptr. 767, 768 (Ct. App. 1960) (tender of entire judgment with request for satisfaction of judgment was not conditional); *cf. Steward v. Yoder*, 408 N.E.2d 55, 57 (Ill. App. Ct. 1980) (concluding tender with request for accord and satisfaction was conditional, but not unreasonable).

Although Bank of America's tender included a condition, it had a right to insist on the condition. Bank of America's letter stated that acceptance of the tender would satisfy the superiority portion of the lien, preserving Bank of America's interest in the property. Bank of America had a legal right to insist on this. SFR's claim that this made the tender impermissibly conditional because the payment required to satisfy the superpriority portion of an HOA lien was legally unsettled at the time is unpersuasive. As discussed in Section A, a plain reading of NRS 116.3116 indicates that at the time of Bank of America's tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, this issue was not undecided, and Bank of America's tender of the superpriority portion of the lien did not carry an improper condition.

## C.

SFR claims that even if Bank of America's tender was valid, the HOA's good-faith rejection because of a belief that Bank of America needed to tender the entire amount of the lien, is a defense to the tender. Bank of America responds that SFR's assertion is speculative because the HOA

never gave a reason for its rejection, and thus cannot serve as the basis for summary judgment in SFR's favor.

Bank of America first contacted the HOA for assistance in determining the property's monthly assessment fee so it could pay the superpriority portion of the lien. The HOA responded with a demand that Bank of America pay the entire HOA lien to halt the foreclosure proceedings. Bank of America then tendered nine months of the property's assessment fees, along with a statutory analysis explaining that the amount was sufficient. The HOA returned the check a few weeks later and continued with foreclosure proceedings, giving no explanation for its rejection.

SFR did not present its good-faith rejection argument to the district court. *But see Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 436, 245 P.3d 542, 544 (2010) ("[A] de novo standard of review does not trump the general rule that '[a] point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.'") (second alteration in original) (quoting *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981)). The authorities it cites to this court for that proposition do not support it. We therefore reject SFR's claim that the HOA's asserted "good faith" in rejecting Bank of America's tender allowed the HOA to proceed with the sale, thereby extinguishing Bank of America's first deed of trust.

D.

SFR next claims that if Bank of America's tender was valid and cured the default on the superpriority portion of the HOA lien, Bank of America's failure to record its tender or keep the tender good renders it ineffective against SFR.

 

1.

SFR argues that Bank of America was required to record its tender under either NRS 111.315 or NRS 106.220.[2] Issues of statutory interpretation are questions of law reviewed de novo. *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013). If a statute is unambiguous, this court does not look beyond its plain language in interpreting it. *Westpark Owners' Ass'n v. Eighth Judicial Dist. Court*, 123 Nev. 349, 357, 167 P.3d 421, 427 (2007). "Whenever possible, a court will interpret a rule or statute in harmony with other rules or statutes." *Nev. Power Co. v. Haggerty*, 115 Nev. 353, 364, 989 P.2d 870, 877 (1999).

NRS 111.315 states that "[e]very conveyance of real property, and every instrument of writing setting forth an agreement to convey any real property, or whereby any real property may be affected, proved acknowledged and certified in the manner prescribed in this chapter . . . shall be recorded . . . ." NRS 111.010 defines conveyance as "every instrument in writing, except a last will and testament . . . by which any estate or interest in lands is created, alienated, assigned or surrendered." Thus, when an interest in land is created, alienated, assigned, or surrendered, the instrument documenting the transaction must be recorded.

By its plain text, NRS 111.315 does not apply to Bank of America's tender. Tendering the superpriority portion of an HOA lien does not create, alienate, assign, or surrender an interest in land. Rather, it

---

[2]In 2015, the Legislature amended NRS Chapter 116 to add NRS 116.31164(2), which imposes recording requirements on certain superpriority lien satisfactions. This statute is not at issue on this appeal, because the tender and foreclosure sale predated its enactment.

*preserves* a pre-existing interest, which does not require recording. *See* Baxter Dunaway, *Interests and Conveyances Outside Acts—Recordable Interests*, 4 L. of Distressed Real Est. § 40:8 (2018) ("[D]ocuments which do not create or transfer interests in land are often held to be nonrecordable; the records, after all, are not a public bulletin board."). SFR's argument that the tender was an instrument affecting real property is unpersuasive. NRS 111.315 pertains to written instruments "setting forth an agreement . . . whereby any real property may be affected . . . *in the manner prescribed in this chapter . . . .*" (Emphasis added.) NRS Chapter 111 governs the creation, alienation, assignment, or surrendering of property interests, and their subsequent recording. Bank of America's tender did not bring about any of these actions, and therefore did not affect the property as prescribed in NRS Chapter 111. Accordingly, NRS 111.315 did not require Bank of America to record its tender.

NRS 106.220 provides that "[a]ny instrument by which any mortgage or deed of trust of, lien upon or interest in real property is subordinated or waived as to priority, must . . . be recorded . . . ." The statute further states that "[t]he instrument is not enforceable under this chapter or chapter 107 of NRS unless and until it is recorded." NRS Chapter 106 does not define instrument as used in NRS 106.220, but *Black's Law Dictionary* defines the term as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *Instrument, Black's Law Dictionary* (10th ed. 2014). Thus, NRS 106.220 applies when a written legal document subordinates or waives the priority of a mortgage, deed of trust, lien, or interest in real property.

SUPREME COURT
OF
NEVADA

(O) 1947A

The changes in the lien priority caused by Bank of America's tender do not invoke NRS 106.220's recording requirements. Generally, the creation and release of a lien cause priority changes in a property's interests as a result of a written legal document. But Bank of America's tender cured the default and prevented foreclosure as to the superpriority portion of the HOA's lien by operation of law. *See* NRS 116.3116; 53 C.J.S. Liens § 14 (2017) ("A statutory lien is created and defined by the legislature. The character, operation and extent of a statutory lien are ascertained solely from the terms of the statute."). NRS Chapter 116's statutory scheme allows banks to tender the payment needed to satisfy the superpriority portion of the HOA lien and maintain its senior interest as the first deed of trust holder. NRS 116.3116(1)-(3); *see also* Unif. Common Interest Ownership Act (UCIOA) § 3-116 cmt. (amended 2008), 7 pt. 2 U.L.A. 124 (2009) ("As a practical matter, secured lenders will most likely pay the [9] months' assessments demanded by the association rather than having the association foreclose on the unit."). Thus, under the split-lien scheme, tender of the superpriority portion of an HOA lien satisfies that portion of the lien by operation of law. Because the lien is not discharged by using an instrument, NRS Chapter 106 does not apply.

2.

SFR also argues that Bank of America should have taken further actions to keep its tender good, such as paying the money into court or an escrow account. Bank of America responds that NRS Chapter 116 does not require any further action beyond tender of the superpriority portion of the lien to preserve its interest in the property.

Whether a tendering party must pay the amount into court depends on the nature of the proceeding and the statutory and common law

of the jurisdiction. *See* Annotation, *Necessity of Keeping Tender Good in Equity*, 12 A.L.R. 938 (1921) ("Generally, there is no fixed rule in equity which requires a tender to be kept good in the sense in which that phrase is used at law."); *see also* Restatement (Third) of Prop.: Mortgages § 6.4 (Am. Law Inst. 1997) ("The tender must be kept good in the sense that the person making the tender must continue at all times to be ready, willing, and able to make the payment."). Where payment into court is not explicitly required, "averment of a readiness and willingness to bring the money into court, and pay the same on the order of the court, is sufficient." Annotation, *Necessity of Keeping Tender Good in Equity*, 12 A.L.R. 938 (1921). And, "the necessity of keeping a tender good and of paying the money into court has no application to a tender made for the purpose of discharging a mortgage lien." Annotation, *Unaccepted Tender as Affecting Lien of Real Estate Mortgage*, 93 A.L.R. 12 (1934) (explaining that such a tender would either immediately discharge the mortgage lien or the lien would remain unimpaired by the tender).

To satisfy the superpriority portion of an HOA lien, the tendering party is not required to keep a rejected tender good by paying the amount into court. HOA liens created under NRS Chapter 116 are statutory liens and thus enforcement of the lien is governed by statute. *See Phifer v. Gulf Oil Corp.*, 401 S.W.2d 782, 785 (Tenn. 1966) ("A lien created by statute is limited in operation and extent by the terms of the statute, and can arise and be enforced only in the event and under the facts provided for in the statute . . . ."). Neither NRS 116.3116, the related statutes in NRS Chapter 116, nor the UCIOA, indicates that a party tendering a superpriority portion of an HOA lien must pay the amount into court to satisfy the lien.

To judicially impose such a rule would only obstruct the operation of the split-lien scheme. The practical effect of requiring the first deed of trust holder to pay the tender into court is that a valid tender would no longer serve to cure the default on the superpriority portion of the lien. Instead, the tendering party would have to bring an action showing that the tender is valid and paid into court to avoid loss of its position through foreclosure of the superpriority portion of the lien. With such conditions, a tendering party could only achieve discharge of the superpriority portion of the lien by litigation. This process negates the purpose behind the unconventional HOA split-lien scheme: prompt and efficient payment of the HOA assessment fees on defaulted properties. UCIOA § 3-116 cmt. (amended 2008), 7 pt. 2 U.L.A. 124 (2009) (recognizing the superpriority lien "strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of lenders"). Accordingly, after tendering the superpriority portion of an HOA lien to preserve its interest as first deed of trust holder, a party is not required to pay the amount into court, and need only be ready and willing to pay to keep the tender good.

### E.

SFR claims that even if Bank of America's tender satisfied the superpriority portion of the HOA lien, SFR's status as a bona fide purchaser (BFP) gives it title to the property free and clear of Bank of America's interest, citing *Shadow Wood Homeowners Ass'n v. New York Community Bancorp, Inc.*, 132 Nev. 49, 366 P.3d 1105 (2016). Bank of America responds that *Shadow Wood* is inapplicable because it concerned the bank as the owner of the property, not the deed of trust holder, and that SFR has failed to prove its BFP status.

A party's status as a BFP is irrelevant when a defect in the foreclosure proceeding renders the sale void. *See Henke v. First S. Props., Inc.*, 586 S.W.2d 617, 620 (Tex. App. 1979) ("[T]he doctrine of good faith purchaser for value without notice does not apply to a purchaser at the void foreclosure sale."); *see also* Baxter Dunaway, *Trustee's Deed: Generally*, 2 L. of Distressed Real Est. § 17:16 (2018) ("A void deed carries no title on which a bona fide purchaser may rely . . . ."). Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest. *See id.*; *cf. Deep v. Rose*, 364 S.E.2d 228 (Va. 1988) (when defect renders a sale wholly void, "[n]o title, legal or equitable, passes to the purchaser").

A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default. *See* 1 Grant S. Nelson, Dale A. Whitman, Ann M. Burkhart & R. Wilson Freyermuth, Real Estate Finance Law § 7:21 (6th ed. 2014) ("The most common defect that renders a sale void is that the mortgagee had no right to foreclose . . . ."); *see also Henke*, 586 S.W.2d at 620 (concluding the payment of past-due installments cured loan's default such that subsequent foreclosure on the property was void). It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale on the entire lien is void as to the superpriority portion, because it cannot extinguish the first deed of trust on the property.

Because Bank of America's valid tender cured the default as to the superpriority portion of the HOA's lien, the HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion. Accordingly, the HOA could not convey full title to the property, as Bank of America's first deed of trust remained after foreclosure. *See* Baxter

Dunaway, *Trustee's Deed: Generally*, 2 L. of Distressed Real Est. § 17:16 (2018) ("Any mortgages, deeds of trust, or liens which are senior to the deed of trust which is being foreclosed are unaffected by the foreclosure of the junior deed of trust.") As a result, SFR purchased the property subject to Bank of America's deed of trust. *See* UCIOA § 3-116 cmt. 2, illus. 3 (amended 2008), 7 pt. 1B U.L.A. 209 (Supp. 2018) (explaining that when a bank pays the superpriority portion of an HOA lien, the subsequent foreclosure sale "will not extinguish Bank's mortgage lien, and the buyer at the sale will take the unit subject to Bank's mortgage lien").

For these reasons, we reverse the district court's grant of summary judgment to SFR and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Pickering

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Hardesty

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A